The next argued case is number 1914-18, Gratia against Walgreen Company. Mr. Walgreen, Mr. Walgreen's point-of-sale device performs each of the six steps claimed in his method. And specifically, Mr. Gratia alleges that the Walgreen's point-of-sale device contains what is called a kernel. In paragraph 18 of the second amended complaint, page 30 of the appendix, Mr. Gratia alleges Walgreen's Equinox device contains, quote, a communications console, end quote, which is the combination of a graphical user interface and an applications programmable interface. The Walgreen's device contains the kernel, which contains interface routines, security and control functions, and logic to manage a set of commands and responses to retrieve the necessary data from the card to complete a transaction, end quote. Mr. Gratia alleges that the kernel within the Walgreen's point-of-sale device matches up with what he claims as the communications console, which is a combination of interfaces that both receives and requests information. Well, the one problem I have, I don't have any problem with your allegation that the kernel is the communication console, but then elements four and five of the claim have certain requirements of the communication console, certain functions that must perform. And my problem is in paragraph 24 and 25 of the complaint, you then don't have the kernel performing those functions. For example, in paragraph 25, Walgreen's EMV-POS requests and receives authorization identification from the token presentment server. There's no question the token presentment server is not part of the kernel, and yet that's exactly one of the claim limitation requirements that the communication console perform, not that a separate off-site server perform. The allegation is that the communications console is made up in part of the API, and so the API is alleged to be within the kernel and within the point-of-sale device. So skipping up to paragraph 24. What is the token presentment server? What is that? That would be on the token service provider, an off-site server that provides the token. Is that the bank or the credit card company? Correct. That's their server? That's correct. And so... That doesn't have anything to do with the kernel, right? Well, that's correct. The kernel is on this point-of-sale card reader. The kernel is on the point-of-sale card reader, and the point-of-sale card reader also contains software applications, firmware, including the API, which sets up a communication with the token service provider. So the allegations of the complaint are that the API, one side of the connection, resides on the point-of-sale device and establishes a connection with the outside server. And so... Are you saying that the token presentment server, which is the server that belongs to the credit card company, is part of the claimed communications console? No. No, your honor. The communications console, by reading paragraph 25, it looks like the way that sentence, the allegation is written, it's it's tracking the claim language such that, in terms of parallelism, one would think that you are alleging here that the token presentment server maps onto the claimed at least one communications console? I think the confusion would arise if you're thinking strictly of a tangible object. And we're dealing in the intangible of software, which is what this kernel is, and what the API is. Yes, but we're also now, at this point, trying to make sure we correctly decipher the content of your complaint. If I could understand, why did you bother to say the sentence the identification reference from the token presentment server, and you say that right after the claimed limitation about, you know, receiving information from the at least one communications console? We're directing our allegations against the point-of-sale device, which contains the kernel, which is this interface, which is a program which allows various tangible and intangible entities to communicate with one another. But on paragraph 25, or on no other paragraph in the complaint, did you allege that it is the kernel that receives the identification reference? You allege that it comes not from the kernel, but from the token presentment server. So I'm struggling, given that this is your second amended complaint, so you've had three shots at this, and you have not yet made an allegation that anything in the Walgreen device amounts to a communication console that receives an authorization identification reference as required by the claim. In fact, your express allegation is that it's the token presentment server that does the receiving, and that can't possibly meet your claim limitation. So all of your other arguments, even if I agreed with every other argument you have made about element three and otherwise, you have in my mind completely and utterly failed to even make an allegation that their device has one of the infringing required elements of your claim. Well, directing your attention to paragraph 25, the POS device requests and receives an authorization identification reference from the token service provider. Yes, and element four says requesting at least one electronic identification reference from the communication console. Which is an interface. So the communication console is the thing from which you have to request the electronic identification reference, and you're saying in this paragraph that it's from the token presentment server, not from the kernel. The communications console is an interface. It's a combination of two interfaces. But it's not the token presentment server, and that's where you allege this comes from. We do not allege that. In paragraph 25, we do not allege that. We allege that the point-of-sale device is requesting and receiving. We also allege in paragraph... Requesting and receiving from what, though? What are you alleging in paragraph 25 is the communications console? It's requesting and receiving from the communications console, which has established that connection. Right, but in the Walgreens accused system, what in the context of paragraph 25 are you identifying as being the alleged communications console? The kernel, which is including the API. Does it say kernel right here? It says token presentment server here. Actually, it says that the POS device is performing the infringing steps of requesting and receiving, and I would reiterate that paragraph... No, but that's not the question. The question isn't whether the POS device is receiving. The question is, what is the POS device receiving from? Element 5 says receiving at least one electronic identification reference from at least one communication console. So it has to be receiving it from the communication console, and you clearly have this POS device receiving it from the token presentment server. I'm sorry, but this is just an open and shut case. If I could direct the court's attention to column 10 of the 555 patent. This is page 21 of the appendix, and starting at line 29 of, again, column 10, a program apparatus scripts often calls these APIs or sections of code residing on the user computerized devices. For example, a web browser running on a user computer, cell phone, or other device can download a section of JavaScript or other code from a web server and then use this code to in turn interact with the API of a remote internet server system as desired. And so the allegations of this complaint are that the kernel serves as the interface on the POS device, which allows the POS device not only to establish a connection using the API, which is specifically alleged in paragraph 24, the Walgreens POS establishes a API related to the EMV token service provider. That API is alleged to be used to establish this connection, yes, with the remote server, but as the specification makes clear, the API residing on the POS device is enabled to communicate with that remote server. None of these allegations are claiming that the remote server is necessary for Walgreens to perform each step of this method. I'm into my rebuttal time. We'll save the rebuttal, and let's hear from the other side. Mr. White? Yes, good morning, your honors. I'm Jason White, and I'm here today on behalf of the district court. The district court was correct in dismissing the Second Amendment complaint because the allegations do not set forth a viable infringement claim. The primary fault with the Second Amendment complaint is that to satisfy different claim limitations, it identifies three or maybe four now different components as the communications counsel. We can see that in paragraphs 18 and then 24 and 25, as you've pointed out. In paragraph 24, it identifies an EMV token service provider as the communications counsel, and then in paragraph 25, it identifies the token presentment server as the supposed communications counsel. That's two different things in contrast to paragraph 18, where the allegation is that the communications counsel is in the point of sale terminal where you check out, swipe your card. So that's at least three different points or components that have been alleged to be this communications counsel. These inconsistencies alone are enough to render the Second Amendment complaint inoperative, and the district court was correct in dismissing for that reason alone. I want to talk briefly about the kernel argument. That's something that was not, I don't think, actually explicitly made in the Second Amendment complaint, so I don't think you even need to consider it. But if you do reach it on the merits, it's also not a viable theory. I think you run into the same problems that you have identified in the third limitation, the fourth limitation, and the fifth, and I'm just going to focus on the fourth and fifth limitations here. The fourth limitation requires requesting an electronic identification reference from the communications counsel, and then the fifth limitation requires requesting the electronic identification reference, I'm sorry, receiving the electronic identification reference from the communications counsel. But you don't have to put all your evidence in the complaint. The dismissal on the complaint, the complaint's accompanied by all sorts of presumptions that this, why wasn't this premature? It wasn't premature for several reasons. First, as Judge Moore pointed out, the plaintiff here got three bites at the apple. They filed their first complaint, we moved to dismiss and pointed out some of the inconsistencies. They filed the First Amendment complaint, we moved to dismiss that or discuss dismissing that, and then they filed the Second Amendment complaint, which was their third bite at the apple. And nowhere across any of these opportunities to plead a case could they put forth a viable infringement claim. So I think it's pretty customary in courts around the country to dismiss with prejudice at this stage after you've been given three bites at the apple. And while you don't have to prove your case, you at least have to put forth an argument that hangs together or could be viable. So here the allegation was that the district court didn't assume all facts as being true. I think that's exactly wrong. Here the district court did assume all the allegations as being true, and it's the assumption that they are true that runs into problems here, because the arguments are inconsistent and don't hang together. Is this patent being asserted against other entities to your knowledge? It has been, yes. Has or is currently? Well, I don't know if any of them are still pending other than our case. It has been asserted many times. So while I think this complaint is deficient, you no doubt know that, you heard the argument. But the one problem I have with the lower court's opinion was sort of the moreover thrown in at the end about divided infringement. And so I just am wondering if there is a need for me to clarify that in light of possible other cases that would be affected by it, because I'm not at all convinced that that was right. It doesn't mean you lose, you win. But I'm just wondering if there's a need to clarify that point. Yeah, I'm sorry. I just don't know the answer to that. I know there were several other cases. The round, I think, of cases that were filed along with this one, I think have all been resolved. I think ours is the only one left from the latest round before the Illinois-Chicago district courts. I just don't know the answer to that. And I think you're right, you don't need to reach that point in affirming the district court decision here. And it would just be a district court decision if left in place that would possibly be persuasive, but obviously not mandatory. Yeah, but the only reason that this district court, she concluded that there was divided infringement is because she concluded that when the claim says receiving, and all of receiving is done by the point-of-sale device, but if she just said, it says where you're receiving the thing from, provided by a server or whatever, that, to me, didn't create an instance of divided infringement. And I would hate to see the law of divided infringement move in that direction because all these kinds of telecom or authorization claims are always going to tell you where you're getting the information from. It doesn't suddenly bring those servers into the claim. And if it did, we would have a lot more claims that weren't capable of infringement under the law of divided infringement if that were the correct law. So I have just a little bit of concern over the breadth of the divided infringement. But even in her opinion, you can see it was sort of a moreover at the end. Moreover, if the other three reasons don't hold, here's another. Understood, Your Honor. And there is another reason, too, that we had argued, and it's in the briefs, the requirement in the first limitation that there'd be a verification token provided by a first user. So that's another instance of a user, somebody not Walgreens and not under the direction or control of Walgreens, having to do something to kick off the process, if you will. So I think that is another separate independent basis why there could have been a finding of divided infringement here. I understand her opinion doesn't say that, but I do think the decision here is supported by that allegation as well. Yeah, but that verification token, again, is just being received by the encrypted digital media access. I understand it has to be provided by somebody, though. So it has to be provided by somebody and then received. So there's at least an action that somebody else has to take. It's not just a situation where the end component is performing all the action by receiving or transmitting. There's some other action that has to happen, which is an action by a user. Well, aside from that clause, do you agree that this claim could be infringed by a single actor? I don't know that I can offer you that definitive answer right now. I don't want to speak out of turn and say yes or no without going carefully and considering every single limitation. So we haven't addressed it in the briefs. I haven't thought that through, so I just hesitate to say a definitive answer. You might get sued again. You never know. You never know. Unless Your Honors have any additional questions, I'll cede back the rest of my time. Okay, thank you. Thank you. Okay, we have some rebuttals. Mr. Orson. Thank you, Your Honors. I'd just like to echo Judge Newman's statement or question, and that is the Rule 12 standard, which was just ignored here. Counsel's response to the question, although he said he had a laundry list, the reasoning that this is the second amended complaint, that just doesn't hold up. It's not as if the standard review somehow changes. And what Mr. Grisha did in that second amended complaint is he alleged that the POS device contains a kernel, which is the claimed interface, which requests and receives information. Each of the allegations is focused in on the point-of-sale device. That's the allegation, and that is enough to get past the pleading stage. That should be accepted as true, and Mr. Grisha shouldn't be held to the standard where the technical feasibility of his invention is being challenged at this stage of the case. I would reiterate that the communications console is at bottom a combination of two interfaces. The plain and ordinary meaning of an interface is a program or a tangible device that bridges the gap between other programs and other devices. And that's exactly what's alleged in the complaint, a POS device containing this interface, which is called a kernel. Mr. Grisha should be given the right to develop evidence on this and prove that it meets the elements of his claim. If there are no further questions, I'll rest. Thank you. Thank you both. The case is taken under submission.